**SIGNED THIS: October 30, 2014**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 14-70578 |
| BENITA K. ALEWELT, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

# O P I N I O N

Before the Court is an Objection filed by Benita Alewelt ("Debtor") to the claim of Wesley Hardin. The Debtor disputes the amount of the claim, as well as the priority status of the claim asserted by Mr. Hardin. For the reasons set forth below, Mr. Hardin's claim will be allowed in the full amount of $55,577.86, with $12,624 entitled to priority status as a domestic support obligation and the balance of $42,953.86 allowed as a general unsecured claim.

**I. Factual and Procedural Background**

In January 2010, the Debtor and Mr. Hardin were divorced by a Judgment for Dissolution of Marriage entered in Sangamon County Circuit Court. Pursuant to the Judgment of Dissolution, Mr. Hardin was required to pay $700 per week in maintenance to the Debtor, subject to termination on the occurrence of certain events. The court also divided the parties' marital property and awarded custody of their only minor child to Mr. Hardin. Later that year, a supplemental order was entered, revising the maintenance award to $500 per week, plus a percentage of Mr. Hardin's overtime income. The Debtor was subsequently directed to pay $68 per week in child support to Mr. Hardin, which was to be deducted from the weekly maintenance payments Mr. Hardin was making to her.

On March 19, 2013, after conducting an evidentiary hearing on a petition to terminate maintenance filed by Mr. Hardin, the circuit court issued an Opinion retroactively terminating the maintenance award as of June 1, 2011. The court found that the Debtor was no longer entitled to maintenance based on her cohabitation with her boyfriend. The court concluded that, after giving credit for amounts to which she was otherwise entitled, the Debtor was required to reimburse Mr. Hardin for $28,581.15 in maintenance payments withheld from his wages between June 1, 2011,[1] and the end of the work week of July 7, 2012, in addition to any amounts withheld thereafter. The March 2013 Opinion also modified the Debtor's child support obligation. The court found that a $17.33

---

[1] The court seemed to erroneously refer to the date as June 11, 2011, on page 11 of the March 2013 Opinion.

-2-

monthly increase in child support was warranted as of September 2011, resulting in an arrearage owed to Mr. Hardin. Additionally, because the court retroactively terminated Mr. Hardin's maintenance obligation, the child support payments previously deducted from the maintenance payments were left unpaid and remained due from June 2011. As a result, the court calculated a child support arrearage of $6384 through March 2013. On March 4, 2014, the circuit court entered a final "Default" Order[2] against the Debtor, finding her in arrears in child support payments in the amount of $12,624 through March 1, 2014, and calculating $42,953.86 as the total amount owed to Mr. Hardin for maintenance reimbursement.

On March 31, 2014, the Debtor filed for relief under Chapter 13. The Debtor scheduled the judgment in favor of Mr. Hardin in the amount of $55,577.86 as an unsecured debt. She did not identify the debt as contingent, unliquidated, or disputed. The Debtor also filed a Chapter 13 plan which made no provision for the payment of any priority debts, proposed no dividend for unsecured creditors, and provided only for the payment of her attorney's fees.

Mr. Hardin filed a timely proof of claim asserting that the full amount of $55,577.86 was entitled to priority status as a domestic support obligation. Attached to the proof of claim was a copy of the March 2014 Order entered in the Sangamon County Circuit Court.

The Debtor filed an Objection to Mr. Hardin's proof of claim challenging the

---

[2] "Default" is handwritten above the typewritten "Order." The Debtor did not appear at the final circuit court hearing but had participated substantially in the proceedings as a whole until that time.

amount of the claim as well as the priority status asserted by Mr. Hardin. The Debtor first complains that no explanation is provided in the proof of claim for the difference in amounts set forth in the March 2013 Opinion and the March 2014 Order. Second, the Debtor argues that a debt owed for overpayment of maintenance is not a domestic support obligation and therefore is not entitled to priority treatment.

At the evidentiary hearing held on the Debtor's Objection to Claim, both Mr. Hardin and the Debtor testified. Mr. Hardin testified that his average yearly income from 2011 to 2013 was $120,000. Mr. Hardin acknowledged that although he was awarded custody of the parties' minor child, both that child and the parties' other young adult son lived with their paternal grandparents beginning in September 2012. From that time, Mr. Hardin testified that he continued and still continues to support the children by paying $100 per month to their grandparents, providing health insurance for them, and paying for their extracurricular activities. Mr. Hardin acknowledged that he owed his attorneys approximately $16,000 as of June 1, 2011, and that he owed his attorneys about $49,000 by March 2013. He stated that he had to refinance his home in order to be able to afford the maintenance obligation to the Debtor. Mr. Hardin further testified that because the Debtor was awarded a significant portion of the parties' personal property, he was forced to purchase new furniture, appliances, and other household items on credit. Mr. Hardin testified about medical expenses he incurred on behalf of the children and himself throughout 2012 and into April 2013. And although Mr. Hardin admitted that he maintained an average daily

bank account balance ranging between $5000 and $10,000, he stated that his job was unstable and he needed to have money on hand in case of an emergency. Mr. Hardin also introduced into evidence an exhibit that had been presented at the final hearing in the circuit court which provided a precise, to-the-penny calculation of the amounts owed by the Debtor for both child support and maintenance reimbursement through the date of the final circuit court order. Pursuant to this Court's pre-trial order, the exhibit had been provided to the Debtor and her attorney well in advance of the hearing.

    The Debtor testified that she did not understand how the Sangamon County Circuit Court calculated the amounts owed as set forth in the March 2014 Order. She stated that she did not appear in the circuit court for the final hearing on the matter and was not aware if she even received notice that a hearing was scheduled. She also stated that she never paid child support directly to Mr. Hardin. Rather, any amounts she owed for child support were deducted from the amounts paid to her by Mr. Hardin. But the Debtor did not dispute that the March 2013 Order retroactively terminated the maintenance order as of June 1, 2011. And although the Debtor denied the accuracy of the circuit court's findings, she did not dispute that she had received maintenance payments through March 2013.

    At the close of the presentation of evidence, the Debtor's attorney requested an opportunity to submit written briefs on the legal issues presented. In her brief, the Debtor conceded that the debt attributable to child support is a domestic support obligation entitled to priority treatment, but continued to argue that the

debt for overpayment of maintenance is not entitled to priority status. Mr. Hardin filed a responsive brief, arguing that his claim for overpayment of maintenance is entitled to priority treatment. The matter was taken under advisement and is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues presented here pursuant to 28 U.S.C. §1334. This matter is a core proceeding under 28 U.S.C. §157(b)(2)(A),(B), and (O).

## III. Legal Analysis

### A. The Presumption of Claim Validity Extends to the Amount but not the Priority Status of Mr. Hardin's Claim.

The allowance of claims is governed by §502 of the Bankruptcy Code. 11 U.S.C. §502. A properly filed claim is presumed valid and is *prima facie* evidence of its own validity and amount. Fed. R. Bankr. P. 3001(f). The presumption is rebuttable, but the objector carries the initial burden to produce some evidence to overcome it. *In re Vanhook*, 426 B.R. 296, 298-99 (Bankr. N.D. Ill. 2010). "Once the objector has produced some basis for calling into question [the] allowability of a claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim in fact is allowable." *In re O'Malley*, 252 B.R. 451, 456 (Bankr. N.D. Ill. 1999).

In her Objection to Claim, the Debtor first challenges the amount of the

claim, citing the discrepancy between the amounts set forth in the circuit court opinion and order and the lack of explanation for the differences. At the hearing, the Debtor did little more than deny any knowledge of how the amounts in the March 2014 Order were computed. But merely objecting, without offering any evidence to support her assertions, is not sufficient to rebut the presumption of validity enjoyed by a claim holder, such as Mr. Hardin, who properly filed his proof of claim. And notwithstanding the evidentiary presumption in his favor, Mr. Hardin presented evidence that the differences in the amounts were attributable to the gaps in time between the motion to terminate maintenance being filed, the evidentiary hearing being held, the circuit court opinion being issued, and the actual termination of the wage garnishment for the maintenance payments. Mr. Hardin presented an exhibit detailing the precise calculation used by the circuit court for the March 2014 Order. Mr. Hardin's claim must therefore be allowed in the full amount asserted.

The further question remains, however, as to how far the evidentiary presumption afforded under Rule 3001(f) extends. Mr. Hardin has asserted priority status as a domestic support obligation for the entire debt owed to him by the Debtor. 11 U.S.C. §507(a)(1)(A). The Debtor objected to the asserted priority status of the entire claim, but now concedes that the child support arrearage obligation is entitled to priority status. She continues to argue that the maintenance repayment debt is not a domestic support obligation. The issue, then, is whether Mr. Hardin can enjoy a presumption of priority under Rule 3001(f) or whether he bears the burden of proving that his entire claim is entitled

to priority status over the Debtor's objection.

A number of courts have declined to extend the presumption to the priority status asserted by claimants, at least in cases dealing with administrative expense claims. *See In re Cardinal Industries, Inc.*, 151 B.R. 833, 836 (Bankr. S.D. Ohio 1992) (citing *Matter of Patch Graphics*, 58 B.R. 743, 745 (Bankr. W.D. Wis. 1986)); *In re Visi-trak, Inc.*, 266 B.R. 372, 374 (Bankr. N.D. Ohio 2001). Those decisions relied on the fact that administrative expense determinations are governed by §503(b), where the party seeking such treatment bears the burden of proof by the preponderance of evidence. In contrast to general proofs of claim filed under §501, which are deemed allowed absent objection under §502, an administrative expense claim is allowed, as determined by the court, only after notice and a hearing. *See* 11 U.S.C. §§501, 502, 503(a)-(b); *In re Williams*, 246 B.R. 591, 594 (B.A.P. 8th Cir. 1999).

Somewhat analogous, a number of courts have limited the extension of an evidentiary presumption in relation to the asserted secured status of a claim. *See In re Duggins*, 263 B.R. 233, 238 (Bankr. C.D. Ill. 2001); *In re Hudson*, 260 B.R. 421, 436 (Bankr. W.D. Mich. 2001); *In re Ball*, 2004 WL 909441, at *3 (Bankr. W.D. Va. Mar. 10, 2004). The gist of those decisions is that because the determination of the secured status of a claim is governed by §506(a), which is not part of the claims allowance process, the presumption created by Rule 3001(f) is not implicated. While the claims allowance process gives presumptive effect to the validity of a properly filed claim, it does not determine whether the claim is fully secured, undersecured, or entirely unsecured. *See Hudson*, 260 B.R. at 436.

Section 506(a)(1) provides that an allowed claim is a secured claim to the extent of the value of the claim holder's interest in collateral, which "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. §506(a)(1). Thus, while holding an allowed claim is a prerequisite to having a secured claim under §506, a creditor's assertion of the value of their secured claim is not factored into the determination of whether to allow the claim in the first place. In other words, to determine the value of an "allowed secured claim" under §506(a), something more than merely filing a claim is necessary. *See Duggins*, 263 B.R. at 238.

Still, other courts have concluded that the evidentiary presumption under Rule 3001(f) does extend to assertions of secured and priority status, citing the intended goal of administrative efficiency in the claims allowance process. *See In re DeAngelis Tangibles, Inc.*, 238 B.R. 96, 98 (Bankr. M.D. Pa. 1999) (citing *In re Transouth Truck Equip., Inc.*, 87 B.R. 937, 940 (Bankr. E.D. Tenn. 1988)); *In re Lampert*, 61 B.R. 785, 787 (Bankr. W.D. Wis. 1986).

Generally, the claims allowance process occurs without the need for judicial determination of every claim filed. *See Duggins*, 263 B.R. at 239. Absent an objection, most timely filed claims will be automatically allowed. *See id.* Even where an interested party has objected, a claim enjoys the presumption of validity and is still "deemed allowed" when the objecting party fails to provide sufficient evidence to shift the burden back to the holder of the claim. *See* 11 U.S.C. §502(a); Fed. R. Bankr. P. 3001(f). This process then establishes the existence of debts and

their entitlement to payment. *See Hudson*, 260 B.R. at 431. But how those claims are paid is a determination made independent of the claims allowance process. *See id.*

Like the determination of administrative expense or secured status, which are governed by Code provisions independent of §§501 and 502, and Rule 3001(f), determination of a claim's priority status is also made independent of the claims allowance process and is governed by §507. This Court has previously noted that "[t]he Rules do not create an evidentiary presumption that properly filed claims are entitled to priority or secured status simply because such status is asserted." *In re Hack*, 2009 WL 1392068, at *6 (Bankr. C.D. Ill. May 14, 2009). Other courts have made the distinction between the presumed validity of a properly filed claim through §502 and Rule 3001(f) and the establishment of priority status under §507. *See Vanhook*, 426 B.R. at 299; *In re Taranovich*, 1994 WL 329429, at *2 (Bankr. S.D. Ga. June 30, 1994).

This Court concludes that Mr. Hardin does not enjoy the same evidentiary presumption of asserted priority that he received regarding the validity and amount of his claim, and therefore had the burden of proving by the preponderance of evidence that his claim is entitled to priority treatment. *See In re Clark*, 441 B.R. 752, 755 (Bankr. M.D.N.C. 2011); *Vanhook*, 426 B.R. at 299. Because the Debtor has conceded the priority status of the child support arrearage, the remaining issue is whether Mr. Hardin has met his burden of proving that the Debtor's obligation to reimburse him for maintenance overpayments is entitled to priority treatment.

## B. Mr. Hardin's Claim for Maintenance Reimbursement is not a Domestic Support Obligation Entitled to Priority Status.

Allowed unsecured claims for domestic support obligations owed to a spouse or former spouse are entitled to priority treatment. 11 U.S.C. §507(a)(1)(A). "Domestic support obligation" is a defined term under the Code. Section 101(14A) provides as follows:

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>>
>> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
>> (i) a separation agreement, divorce decree, or property settlement agreement;
>>
>> (ii) an order of a court of record; or
>>
>> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. §101(14A).

Four elements must be satisfied for a debt to be treated as a domestic support obligation: (1) the payee of the obligation must be either a governmental entity or a person with a particular relationship to the debtor; (2) the nature of the obligation must be support; (3) the source of the obligation must be an agreement, decree, court order, or other determination made by a governmental unit; and (4) any assignment must be consistent with the statutory limitations. *See Vanhook*, 426 B.R. at 300-01.

The term "domestic support obligation" was one of the new definitions added to the Code in 2005. But courts continue to find that case law construing former §523(a)(5) is relevant and persuasive in determining whether a debt is "in the nature of support" and therefore is a "domestic support obligation." *See* 11 U.S.C. §523(a)(5); *Wis. Dep't of Workforce Dev. v. Ratliff*, 390 B.R. 607, 612 (E.D. Wis. 2008); *In re Hudson*, 2007 WL 4219421, at *2 (Bankr. C.D. Ill. Nov. 27, 2007); *In re Taylor*, 737 F.3d 670, 676 n.4 (10th Cir. 2013). Courts have relied on a multitude of factors in determining whether an obligation is in the nature of support. This Court, in *Hack*, acknowledged the comprehensive list of factors set forth in *In re Daulton,* 139 B.R. 708, 710 (Bankr. C.D. Ill. 1992). *Hack*, 2009 WL 1392068, at *3. Ultimately, determining whether an obligation is in the nature of support is a fact-sensitive inquiry and any decision must be based on the totality of circumstances of each particular case. *See Clark*, 441 B.R. at 755; *In re*

*Gambale,* 512 B.R. 117, 123 (Bankr. D.N.H. 2014).

There is, of course, no question that Mr. Hardin's original obligation to pay periodic maintenance to the Debtor was in the nature of support. The circuit court found a significant disparity in the parties' incomes at the time of the dissolution of the marriage and specifically found that the Debtor was in need of support. But the question here is whether payments which were clearly in the nature of support when initially made by Mr. Hardin remain of the same character — in the nature of support — when the Debtor was ordered to refund some of those same payments to Mr. Hardin.

Several courts have found that obligations to reimburse overpayments of support are, in turn, support obligations. *See, e.g.*, *In re Knott*, 482 B.R. 852, 856 (Bankr. N.D. Ga. 2012); *In re Norbut*, 387 B.R. 199, 210-11 (Bankr. S.D. Ohio 2008); *In re Baker*, 294 B.R. 281, 288 (Bankr. N.D. Ohio 2002). Other courts have found that obligations to reimburse support overpayments are not support obligations. *See, e.g., Taylor,* 737 F.3d at 679; *In re Galiardo*, ___ B.R. ___, 2013 WL 6184931, at *4 (Bankr. M.D. Fla. Nov. 27, 2013); *In re Drinkard*, 245 B.R. 91, 94 (Bankr. N.D. Tex. 2000); *In re Lutzke,* 223 B.R. 552, 554-55 (Bankr. D.Or. 1998). Regardless of outcome, the cases generally suggest that no *per se* rule is appropriate, and each case should be decided on its own specific facts. *See Galiardo,* 2013 WL 6184931, at *2; *Norbut,* 387 B.R. at 210-11.

The Debtor's obligation to reimburse the maintenance overpayments to Mr. Hardin is admittedly an obligation owed to a former spouse which has not been assigned to any other entity and which was created by court order. Thus, the only

statutory factor which remains in dispute is whether the reimbursement obligation is actually in the nature of support.

The circuit court terminated the Debtor's entitlement to maintenance payments from Mr. Hardin because the Debtor was found to be cohabiting with her boyfriend. Illinois law provides that cohabitation is grounds for termination of maintenance obligations, and the original award of maintenance to the Debtor was expressly limited to being paid only so long as she remained statutorily eligible for the payments. *See* 750 ILCS 5/510(c). In terminating the Debtor's maintenance, the circuit court relied solely on the cohabitation issue. The circuit court did not find that the disparity in the parties' incomes no longer existed or that the Debtor was no longer in need of support. To the contrary, even though Mr. Hardin prevailed on the issue of termination of maintenance, because of the disparity in their incomes he was ordered to pay a portion of the Debtor's attorney's fees associated with the litigation.

Before this Court, Mr. Hardin testified credibly as to the hardship that making the maintenance payments to the Debtor had caused him over the years. Although he earned a six-figure income each year, Mr. Hardin fully supported the parties' minor son and their young adult son and continues to financially assist both young men. He also was obligated to pay other debts incurred during the marriage and has met those obligations.

The Debtor lacked credibility in her presentation. She persisted in her claim that the amounts of the state court reimbursement judgment were wrong even though she had received the precise calculations used for the judgment before the

hearing and could not actually point to any error in those calculations. She insisted that the portion of the judgment related to her child support arrearage due to Mr. Hardin was not entitled to priority status and claimed that case law supported that position even though she cited no case law at the hearing and then conceded the point in her post-hearing brief.

Nevertheless, this Court must find that Mr. Hardin's claim for reimbursement of maintenance overpayments from the Debtor is not a domestic support obligation, and is therefore not entitled to priority status. Mr. Hardin failed to present any evidence that the order requiring the Debtor to reimburse the overpayments was based on his need for the funds. An established need for support is a key factor in determining whether an obligation is in the nature of support. *See Galiardo,* 2013 WL 6184931, at *2-3. Here, it is not disputed that Mr. Hardin still earns significantly more than the Debtor. The Debtor forfeited her right to maintenance solely because of her cohabitation. Further there is no evidence that the circuit court intended the reimbursement obligation to be in the nature of support. The intent of the parties in agreeing to or of a court in ordering the payments is another key factor in determining whether an obligation is in the nature of support. *See Norbut*, 387 B.R. at 206-07 (discussing *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1110 (6th Cir. 1993)); *Hack*, 2009 WL 1392068, at *5. In the absence of any evidence that the circuit court order was based on the current needs of Mr. Hardin or on an intent by the circuit court to create a support obligation for the benefit of Mr. Hardin, the portion of the claim related to maintenance reimbursement must be denied priority status.

-15-

## IV. Conclusion

Because the Debtor failed to overcome the presumption of validity enjoyed by Mr. Hardin's properly filed proof of claim, her objection to his claim on the basis of amount will be denied. And because the Debtor has now conceded that the child support arrearage debt is in the nature of support and entitled to priority, her objection to that portion of the claim in the amount of $12,624 will be denied. But because Mr. Hardin failed to prove that the portion of his claim relating to the overpayment of maintenance is entitled to priority, the Debtor's objection will be sustained in part, and the balance of Mr. Hardin's claim in the amount of $42,953.86 will be allowed only as a general unsecured claim. Finally, because the Debtor's Chapter 13 plan fails to provide for the full payment of the child support arrearage, confirmation of the plan must be denied. *See* 11 U.S.C. §1322(a)(2).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###